FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 09, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 2:20-CV-00047-SAB |
| Plaintiff, | |
| v. | |
| ALEX M. AZAR II, in his official capacity as Secretary of the United States Department of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; SEEMA VERMA, in her official capacity as Administrator of the Centers for Medicare and Medicaid Services; and CENTERS FOR MEDICARE AND MEDICAID SERVICES, | **ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendants. | |

Before the Court are Plaintiff's Motion for Partial Summary Judgment on Non-Preemption, ECF No. 6, and Defendants' Cross-Motion for Partial Summary Judgment, ECF No. 10. Plaintiff is represented by Kristin Beneski, Laura K. Clinton, and Spencer W. Coates. Defendants are represented by Bradley P. Humphreys.

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDMENT ~ 1**

## Background

In 2019, Washington State enacted the Single-Invoice Statute, which requires health insurance carriers to bill enrollees with a single invoice. Wash. Rev. Code § 48.43.074. The intent of the Legislature in passing the statute was to codify the State's current practice of requiring healthcare carriers to bill enrollees with a single invoice and to segregate into a separate account the premium attributable to abortion services for which federal funding is prohibited. *Id.* Specifically, the Single-Invoice Statute requires an issuer offering a qualified health plan ("QHP")[1] to bill enrollees and collect payment though a single invoice that includes all benefits and services covered by the QHP and provide a certification that the issuer's billing and payment processes meet these requirements. Wash. Rev. Code § 48.43.074(2)(a)-(b)

Prior to the passage of this law, Washington had created the State's Health Benefit Exchange, where private insurance carriers offered QHPs on the Exchange.[2] *See* Wash. Rev. Code Chap. 43.71. These private insurance carriers are subject to oversight by the Washington State Office of the Insurance Commissioner ("OIC"). Under Washington law, any plan that includes coverage for maternity care or services must also include substantially equivalent coverage for abortion services. Wash. Rev. Code § 48.43.073. According to the OIC, neither federal nor Washington law require separate premium billing to enrollees for a

---

[1] The Patient Protection and Affordable Care Act ("ACA") defines Qualified Health Plan as a health care coverage plan offered on a state exchange that meets the relevant statutory criteria, including that it must offer "essential health benefits" as defined in the Act." 42 U.S.C. § 18021.

[2] Section 1311(b)(1) of the ACA gives each state the opportunity to establish an Exchange that facilitates the purchase of QHP's by individuals and families. 42 U.S.C. § 18031(b)

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDMENT ~ 2**

plan's coverage of such abortion services. Wash. Admin. Code § 284-07-540.

Section 1303 of the Patient Protection and Affordable Care Act ("ACA") provides certain prohibitions, restrictions, and requirements with respect to coverage of abortion care by QHP offered through the state Exchanges. 42 U.S.C. § 18023. It prohibits the use of certain federal funds to pay for coverage of abortion services by a QHP for which payment would not be permitted under the Hyde Amendment.[3] 42 U.S.C. § 18023(b)(2). QHP issuers may not use premium tax credits or cost-sharing reductions to pay for abortion care. 42 U.S.C. § 18023(b)(2)(B)(i). Other requirements include that if the QHP includes coverage for abortion care, issuers must provide notice of such coverage; charge and collect at least $1 per enrolled per month for coverage of abortion care; deposit the collected funds into a separate account; maintain the segregation of such funds; and use only such finds to pay for abortion care. 42 U.S.C. § 18023(b).

Currently, federal law does not specify the method an issuer must use to comply with the segregation of funds requirement. Neither do the Department of Health and Human Services ("HHS") regulations that have been in place since

---

[3] Since September 1976, Congress has prohibited—either by an amendment to the annual appropriations bill for the Department of Health, Education, and Welfare or by a joint resolution—the use of any federal funds to reimburse the cost of abortions under the Medicaid program except under certain specified circumstances. *Harris v. McRae*, 448 U.S. 297, 302 (1980). This funding restriction is commonly known as the "Hyde Amendment," after its original congressional sponsor, Representative Hyde. *Id.* The Hyde Amendment prohibits taxpayer funding for abortion, except for pregnancies that are the result of rape or incest, or if a woman suffers from a life-threatening physical disorder, physical injury, or physical illness, including a life-endangering physical condition caused by or arising from the pregnancy itself, as certified by a physician. *Id.*

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDMENT ~ 3**

2012. *See* 45 C.F.R. § 156.280(e). Notably, in 2015, HHS promulgated a final rule explaining that section 1303 "do[es] not specify the method an issuer must use to comply with the separate payment requirement."[4] The 2015 Final Rule informed health plan issuers and state regulators that the requirement "may be satisfied in a number of ways," including, but not limited to (i) sending the enrollee a single monthly invoice that separately itemizes the premium amount for abortion services, (ii) sending a separate monthly bill for abortion services, or (iii) sending the enrollee a notice upon enrollment that the monthly invoice will include a separate, specified charge for abortion services. 80 Fed. Reg. 10,840 The Rule allowed enrollees to make the separate payments for abortion services and other services in a "single transaction." *Id.* The purpose of this was to offer "several ways to comply with [§ 1303's] requirements, while minimizing burden on QHP issuers and consumers. *Id.* at 10,841.

In October 2017, the Centers for Medicare and Medicaid Services (CMS) issued its own guidance listing the same options for complying with § 1303's funding segregation requirements.[5]

Notwithstanding its prior Rules, in December 2019, HHS published a new Rule that would require all plan issuers whose QHP covers abortion care to send enrollees two separate bills each month, with instructions to pay the separate bills in two separate transactions. Patient Protection and Affordable Care Act: Exchange Program Integrity, 84 Fed. Reg. 71,674 (Dec. 27, 2019). Under this Rule, one bill

---

[4] Patient Protection and Affordable Care Act: HHS Notice of Benefit and Payment Parameters for 2016. 80 Fed. Reg. 10750-01 (Feb. 27, 2015) (2015 rule).

[5] *CMS Bulletin Addressing Enforcement of Section 1303 of the Patient Protection and Affordable Care Act* (October 6, 2017), *available at* https://www.cms.gov/CCIIO/Resources/Regulations-and-Guidance/Downloads/Section-1303-Bulletin-10-6-2017-FINAL-508.pdf.

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDMENT** ~ 4

must cover the premium cost of coverage for all health care services except abortion care, and the second bill must address only the cost of covering abortion care. *Id.* at 71,684. If the Double-Billing Rule is enforced in Washington state, it would preempt Washington's Single-Invoice Statute.

Plaintiff, the State of Washington, sued Defendants for declaratory and injunctive relief. Plaintiff is bringing seven claims:

(Count I) the Double-Billing Rule violates the Administrative Procedures Act ("APA") as contrary to law, specifically § 1303 of the ACA;

(Count II) the Double-Billing Rule violates the APA as contrary to law, specifically § 1321 of the ACA;

(Count III) the Double-Billing Rule violates the APA because HHS acted in excess of its statutory authority;

(Count IV) the Double-Billing Rule violates the APA as contrary to law, specifically § 1554 of the ACA;

(Count V) the Double-Billing Rule violates the APA because it is arbitrary and capricious.

(Count VI) the Double-Billing Rule violates the Notice and Comment requirement of the APA; and

(Count VII) the Double-Billing Rule violates the 10th Amendment.

Plaintiff asks the Court to declare the Double-Billing Rule to be unauthorized and contrary to the Constitution and the laws of the United States; declare the Double-Billing Rule invalid and without force of law, and vacate the Rule in full; issue preliminary and permanent injunctions prohibiting Defendants from implementing or enforcing the Double-Billing Rule; and award costs and reasonable attorneys fees.

It now moves for summary judgment on Counts 1 and II of its Complaint. Plaintiff asks the Court to declare that the Rule does not apply and has no force or effect in Washington State.

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDMENT ~ 5**

## Motion Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## Administrative Procedures Act

Federal administrative agencies are required to engage in "reasoned decisionmaking." *Michigan v. E.P.A.*, __ U.S. __, 135 S.Ct. 2699, 2706 (2015). "Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDMENT ~ 6**

rational." *Id.* (quoting *Allentown Mack Sales & Service, Inc. v. N.L.R.B.*, 522 U.S. 359, 374 (1998)).

The Administrative Procedure Act "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). Under 5 U.S.C. § 706, the Court must "hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

## Presumption Against Preemption

Plaintiff argues that HHS is prohibited from issuing regulations that would effectively preempt state law, given the ACA's clear non-preemption provisions. It asserts that, pursuant to the APA, the Court should set aside the Rule because it is not in accordance with law.

There are two cornerstones of preemption jurisprudence: First, the purpose of Congress is the ultimate touchstone in every preemption case; and second, where Congress has legislated in fields the states have traditionally occupied, the presumption is that the historic police powers of the States are not to be superseded by Congress unless that was its clear and manifest purpose. *Wyeth v. Levine*, 555 U.S. 555, 566 (2009) (citation omitted). Preemption can generally occur in three ways: (1) where Congress has expressly preempted state law (*express preemption)*; (2) where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law (*field preemption*); or (3) where federal law conflicts with state law. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990) (emphasis added). State laws that conflict with federal law are "without effect." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008). That said, the preemption of state laws represents "a serious intrusion into state sovereignty." *Medtronic, Inc. v. Lohr*, 518 U. S. 470, 488 (1996) (plurality opinion). As such, when courts are confronted with two plausible interpretations of a statute, they

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDMENT ~ 7**

"have a duty to accept the reading that disfavors preemption." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005); *see also City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 439-40 (2002) ("Absent a basis more reliable than statutory language insufficient to demonstrate a 'clear and manifest purpose' to the contrary, federal courts should resist attribution to Congress of a design to disturb a State's decision on the division of authority between the State's central and local units over safety on municipal streets and roads.").

In this case, the Court is being asked to give meaning to Congress' intent to not preempt state law that can be found in various provision within the ACA. First, § 1303 of the ACA—the same section that establishes the funding segregation requirements discussed above—contains an express non-preemption provision. Specifically, that provision, entitled "No preemption of State laws regarding abortion" provides:

> (c) Application of State and Federal laws regarding abortion
>     (1) No preemption of State laws regarding abortion
> Nothing in this Act shall be construed to preempt or otherwise have any effect on State laws regarding the prohibition of (or requirement of) coverage, funding, or procedural requirements on abortions, including parental notification or consent for the performance of an abortion on a minor.

42 U.S.C. § 18023(c)(1).

Second, 42 U.S.C. § 18041(d) provides that state laws are not preempted unless they directly conflict with Title 1 of the ACA.[6]

Congress has provided express disclaimers of preemption in regard to other laws. For example, § 709 of the Controlled Substance Act contains the Act's non-preemption clause and it provides that the CSA shall not be construed to preempt

---

[6] (d) No interference with State regulatory authority
Nothing in this title shall be construed to preempt any State law that does not prevent the application of the provisions of this title. 42 U.S.C. § 18041(d).

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDMENT ~ 8**

state law unless there is a "positive conflict" between the text of the statute and state law." 21 U.S.C. § 903; *Oregon v. Ashcroft*, 368 F.3d 1118, 1126 (9th Cir. 2004). Another example is § 603(a) of the Labor-Management Reporting and Disclosure Act of 1959, which disclaimed preemption of state laws regulating union officials' responsibilities except where such preemption is expressly provided. 29 U.S.C. § 523(a).[7] The U.S. Supreme Court noted that in passing this provision, "Congress necessarily intended to preserve some room for state action concerning the responsibilities and qualifications of union officials." *Brown v. Hotel and Rest. Employees and Bartenders Intern. Union Local 54*, 468 U.S. 491, 506 (1984). Another example of express disclaimers of preemption was § 1161(o) of the Water Quality Improvement Act of 1970.[8] *Askew v. Am. Waterways Op., Inc.*, 411 U.S. 325 (1973).[9] The U.S. Supreme Court noted that the Act

---

[7] Section 603(a), as set forth in 29 U.S.C. § 523(a), provides:
> Except as explicitly provided to the contrary, nothing in this chapter shall reduce or limit the responsibilities of any labor organization or any officer ... under any other Federal law or under the laws of any State, and, except as explicitly provided to the contrary, nothing in this chapter shall take away any right or bar any remedy to which members of a labor organization are entitled under such other Federal law or law of any State.

[8] "This Act subjects shipowners and terminal facilities to liability without fault up to $14,000,000 and $8,000,000, respectively, for cleanup costs incurred by the Federal Government as a result of oil spills. It also authorizes the President to promulgate regulations requiring ships and terminal facilities to maintain equipment for the prevention of oil spills." *Askew*, 411 U.S. at 328.

[9] Section 1161(o) provided:
> (1) Nothing in this section shall affect or modify in any way the obligations of any owner or operator of any vessel, or of any owner or operator of any onshore facility or offshore facility to any person or agency under any provision of law for damages to any publicly-owned

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDMENT ~ 9**

presupposed a coordinated effort with the States, which is reflected in Congress' intent that the Act did not preempt states from establishing either any requirement or liability respecting oil spills. *Id.* These cases stand for the principle that state laws that fall within the express disclaimer of preemption are given effect. It follows that federal regulations that conflict with such state laws are not. Moreover, by including the non-preemption sections in the ACA, it is clear Congress intended a similar coordinated effort with the States to achieve the objections of the ACA, and as such, state laws that fulfil those objectives should not be preempted by subsequent agency action.

When a federal law contains an express preemption clause, courts "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 594 (2011) (*quoting CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)). Similarly, when Congress contains an express disclaimer of preemption, the Court must focus on the plain wording of the clause.

### *Chevron* Analysis

Defendants argue the non-preemption statute is ambiguous, and thus, the Court should defer to its statutory interpretation, invoking *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

When analyzing an agency's interpretation of a statute, courts often apply the two-step framework announced in *Chevron*. Under that framework, courts ask

---

or privately-owned property resulting from a discharge of any oil or from the removal of any such oil.
(2) Nothing in this section shall be construed as preempting any State or political subdivision thereof from imposing any requirement or liability with respect to the discharge of oil into any waters within such State.
(3) Nothing in this section shall be construed . . . to affect any State or local law not in conflict with this section.
*Askew*, 411 U.S. at 329.

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDMENT ~ 10**

whether the statute is ambiguous and, if so, whether the agency's interpretation is reasonable. *Id*. at 842–43. This approach "is premised on the theory that a statute's ambiguity constitutes an implicit delegation from Congress to the agency to fill in the statutory gaps." *F.D.A. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000).

On the other hand, if the statutory language is plain, courts must enforce it according to its terms. *King v. Burwell*, __ U.S. __, 135 S. Ct. 2480, 2489 (2015); *Chevron*, 467 U.S. at 842. When a statute is unambiguous as to a specific matter, such that "the intent of Congress is clear," a court must "give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842-43.

## Discussion

Washington's Single-Invoice Statute is a state law "regarding" abortion coverage and funding, which falls squarely within the scope of § 1303(c). The wording of § 1303(c) clearly expresses Congress' intent to preserve broad categories of state law from preemption, including billing practices related to the funding of abortions. Because the Washington statute does not conflict with the ACA or frustrate its purposes and objectives, it cannot be preempted by the Double-Billing Rule. *See Va. Uranium, Inc. v. Warren*, __ U.S. __, 139 S. Ct. 1894, 1900 (2019) (in upholding state law banning uranium mining, the Supreme Court stated, "[n]or do we see anything to suggest that the enforcement of Virginia's law would frustrate the [Atomic Energy Act's] purposes and objectives. And we are hardly free to extend a federal statute to a sphere Congress was well aware of but chose to leave alone. In this, as in any field of statutory interpretation, it is our duty to respect not only what Congress wrote but, as importantly, what it didn't write.").

Washington State supports a women's right to choose, as well as her right to access safe and legal abortion care, evidenced by its requirement that if any QHP includes coverage for maternity care or services, it must also include substantially

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDMENT ~ 11**

equivalent coverage for abortion services. Wash. Rev. Code § 48.43.073. The Double-Billing Rule attempts to intrude on the State's right to do so by imposing onerous, arbitrary, and unnecessary billing practices that have little to do with providing efficient and effective medical coverage and everything to do with trying to prevent Washington's State recognition of a women's right to assess safe and legal abortions. *See Oregon*, 368 F.3d at 1125 ("Unless Congress' authorization is 'unmistakably clear' the Attorney General may not exercise control over an area of law traditionally reserved for state authority, such as regulation of medical care."). The Court will not condone HHS's blatant disregard of the rights of Washington citizens.

Given the plain language of the ACA, this Court is under no obligation to defer to HHS's interpretation of § 1303. *See id*. at 1139. The language of the statute comes from Congress, not HHS. Thus, there is no reason to defer to the agency's interpretation of the statute. *See Gonzales v. Oregon*, 546 U.S. 243, 257 (2006). It is undisputed that HHS's current interpretation runs counter to the prior guidance from HHS regarding billing for abortion services. *Id.* at 258 ("That the current interpretation runs counter to the 'intent at the time of the regulations promulgation' is an additional reason why … deference is unwarranted.) Moreover, "[a]gency determinations that squarely conflict with governing statutes are not entitled to deference." *Id.*

Because courts must set aside agency decisions that rest on an erroneous legal foundation, and because the Double-Billing Rule clearly conflicts with Washington's Single-Invoice State and cannot be squared with the ACA's multiple non-preemption provisions, the Court declares the Double-Billing Rule invalid and without force in the State of Washington.

//
//
//

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDMENT** ~ 12

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Partial Summary Judgment on Non-Preemption, ECF No. 6, is **GRANTED**.

2. Defendants' Cross-Motion for Partial Summary Judgment, ECF No. 10, is **DENIED**.

3. The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendants.

**IT IS SO ORDERED**. The Clerk of Court is directed to enter this Order, forward copies to counsel and close the file.

**DATED** this 9th day of April 2020.



                    Stanley A. Bastian
                    United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDMENT ~ 13**